Prieto v. Davis. Good morning. May it please the court, my name is Miriam Arrington and with Carrie Bowen I represent Mr. Prieto in this case. This matter comes before the court on appeal from a district court's decision denying a writ of habeas corpus and granting the government's motion to dismiss. This court has granted a certificate of appealability on one issue, claim 5, Mr. Prieto's Atkins claim and the court will review whether the state court's judgment was contrary to or an unreasonable application of federal law de novo. We contend Mr. Prieto's execution is barred by the Eighth Amendment under the Atkins rule and that the state court's refusal to consider the Atkins claim violated due process. We further contend that it is proper for the federal court to consider the issue to correct a fundamental miscarriage of Mr. Prieto has a cognizable Atkins claim. In the government's brief I think it's correctly laid out the three primary questions for today and I'll try to address each in turn. The first is whether there's a procedural default that bars the Atkins claim. The second is whether the Supreme Court's decision in Florida v. Hall is applicable, whether it was retroactive, and then finally if there's merit to the underlying Atkins Hall claim. And looking first at whether or not this case is subject to a procedural default I think it's important just to briefly mention the procedural history in this case which is somewhat unusual and that issues were presented to the courts below a number of times. In 2007 the first jury to hear this issue did hear evidence of intellectual disability. The jury deadlocked. It's clear from the record that the jury deadlocked specifically on this issue and a mistrial was was later granted. The same issue of intellectual disability was presented again at sentencing in 2008 and the record is clear that there was a strong focus on ID scores. Mr. Prieto did present other evidence. What does that have to do with procedural default? Any question of whether or not you raised the issue on direct appeal? Sir, I would say that the IQ... Isn't that the test we apply whether or not you raised it raised the issue on direct appeal? It's not whether it may have been at play or it may have been a reason for evidence being offered but isn't that the question? Isn't that what procedural default addresses? Yes sir and at the heart of... And so did you raise this on direct appeal? It was not raised on the direct appeal from in 2010. Did you ever raise it on direct appeal? It was raised in 2007 and 2008 when it was remanded for resentencing. The issue was not explicitly raised as it relates to intellectual disability. Trial counsel did present evidence of brain damage and other trauma but then that Atkins claim was not part of the 2010 appeal. So if you did procedurally default, if we put the you know Hall said that the rigid IQ number is not constitutional correct? Yes sir. It may not even apply on collateral review but let's just set that side of Hall aside to one side for a second. You also have to show by clear and convincing evidence if this is a procedural default that your client doesn't have the adaptive functioning prong. Isn't that correct? You have to show both. You have to show IQ. To avoid the death penalty he would have to show limited IQ whatever that test is and also and that he doesn't have adaptive functioning. Correct sir. If it is procedural default you have to show that by clear and convincing evidence. Isn't that correct? That's correct. What evidence do you have that's clear and convincing all the evidence presented that he doesn't meet the adaptive functioning? Your Honor, looking at the record below and I think this is why we emphasize the importance of Hall. In the record below specific the adaptive functioning. Right. There's testimony from family members, friends, teachers, however. There is evidence that he doesn't have adaptive functioning but there's a lot of evidence that he does have adaptive functioning. Isn't that correct? And the jury rejected that evidence in that 2008 proceeding and I recognize you're saying that they labored under this rigid IQ cutoff but the government says otherwise. I mean if the jury in that case rejected that evidence how can we say by clear and convincing evidence how can you meet your burden if in fact we've already had a jury decide the case against you? And Your Honor that's sort of where the Hall application ties in and why we're arguing that Hall is applicable here. The government is correct that the 2008 jury rejected that argument however the 2008 jury as well as 2008 counsel and the court were operating under the the statutory scheme that was in place at that time. Well that certainly controls sort of the conclusions they might reach but doesn't control what the evidence was. Yes Your Honor and certainly there was evidence before the court that there's a. I mean it's not like you held back some evidence or your client's lawyer then, I realize you didn't represent him then, was holding back evidence because you didn't know the correct standard. I mean that's not your argument. No I wouldn't contend that it was held back however of course with today's posture and looking back at that case they're operating their trial strategy and they're operating the evidence that was presented within the statute which does include. But they presented evidence, they presented evidence some people would say maybe somebody a fact finder could decide that showed failure of adaptive functioning. It's just that didn't went on that issue below. And our assessment of the record is that essentially the strongest evidence against Mr. Prieto was Dr. Hagen's testimony in 2008. Dr. Hagen was the expert for the Commonwealth who testified that that he didn't meet that standard and Dr. Hagen. There's other evidence too, he's bilingual and he helped translate I think for the chaplain or something. He committed a series of murder over several decades and was able to get away with it. That I mean that didn't sound like the kind of thing we that I normally see in failure to meet adaptive functioning. And respectfully we would submit that the evidence in support of adaptive deficits outweighed that. Certainly we can see that there's evidence on the record against that conclusion. But I would circle back again to the strong emphasis placed on Dr. Hagen's testimony which has him at an IQ of 73. Under the Virginia statute at that time. But it did, but each time it's my question about leaving aside the IQ issue. I'm talking about because there's play in all those numbers. You know the courts have been fighting those numbers for years and what to do with them. What do we do with those numbers? What is reasonable? What isn't reasonable? And the Supreme Court sort of giving us some clear guidance. But setting that aside you have to meet both prongs. And have you said all you want to say about the adaptive functioning prong? Well if I've answered your question, the evidence we contend was stronger in favor of the adaptive functioning. The evidence dating back to his early childhood that his demeanor was that of a much younger child. That he was essentially progressed in school despite not really deserving to be progressed in school. And the evidence of the people that were closest to him, his family members who knew him through the course of his life. And so our contention is that the record would be sufficient on that issue. You know we've gotten away from the procedural default. Yes ma'am. If you lose on procedural default it really doesn't matter. I would agree judge and I would agree that the procedural default is really the first question that we need to answer. Under a strict definition of exhaustion there's no getting around the fact that this issue was not raised in the 2010 direct appeal. I do think it ties back into the point. But and the reason why I mentioned that this issue was raised in 2007 and 2008 is because although it was not raised on the final direct appeal it was certainly not a novel issue that was raised for the first time on collateral review. In looking at some of the case law. Yeah I was going to say you have a Virginia case that makes that distinction. That says it's not defaulted if it was raised on an earlier appeal and then the case was vacated by the appellate court and sent back and then not raised on the subsequent appeal. Not in its holding your honor. But there is a little bit of a distinction just in terms of looking at the totality of the case. In cases such as Hendrick and Slayton a very different set of facts. Facts where pretrial identification was never even raised in a whisper before habeas proceedings. The rule is you have to raise the issue on direct appeal. Yes ma'am. And if this court finds as the district court found that it's barred by procedural appeal. The question is does an exception apply? And I think that's a primary focus of our argument here today. Your honor I see that I have about five minutes remaining. The two exceptions that could apply are the cause and prejudice or the fundamental miscarriage of justice. We had attempted to address both of them in district court but on this appeal we are really asserting that there was a fundamental miscarriage of justice and that's why we didn't appeal the claim of ineffective assistance of counsel. So we know from the Sawyer case that this exception can apply in capital sentencing for someone being innocent of the death penalty as opposed to a case of actual innocence. And the standard of course as the court has noted is clear and convincing evidence that no reasonable juror would find pre-acto eligible for the death penalty. And so I think we sort of jumped ahead to that discussion a little bit but that is it is our position that this is a fundamental miscarriage of justice. Atkins stands for the proposition that under our Constitution it is impermissible to execute somebody with an intellectual disability. Hall elaborated on that and tells us how we define that. And our position is that in this case that Mr. Prieto is at risk for this fundamental miscarriage of justice and essentially we're looking at a case where somebody who is intellectually disabled could be executed. But you're ruling out the adaptive function prong then. I'm sorry? You said then you're ruling out the adaptive function prong of the test. Before you say is somebody who doesn't meet that IQ level can't be, aren't you ruling out the adaptive function prong and and a defendant would have to meet both of those prongs? The defendant does have to meet both of those prongs. So then but for you to say it's a miscarriage of justice your argument is as I understand it to execute somebody with the limited IQ, a lower IQ. But that didn't, you didn't rule out the second part of the test. And I may have missed it. And if that's so how is that a miscarriage of justice? The miscarriage of justice in our view is to have somebody executed when they're intellectually disabled. And so in this case our position is that on the record Mr. Prieto meets both of those. Your is not the issue alone and in fact Hall furthers that. But on the record our position is that there is ample evidence, significant evidence of adaptive functioning as well as this IQ range of 62 to 73 which is at the time sort of straddled the standard deviation of 70. But under Hall is well within the suggested range of 70 to 75. I think we understand your argument. You have a little bit of time left for rebuttal. Unless you want to say something more. No, Your Honor. I'll reserve the remainder of my time. Good morning, Your Honors. May it please the court, Alice Armstrong on behalf of the warden. Your Honors, the principal submission is that this claim is procedurally defaulted and we would ask the court to affirm the district court's decision on that basis. When this claim was presented of the Supreme Court of Virginia in state habeas, the Supreme Court ruled that it was procedurally defaulted under the state's rule enunciated in Slayton versus Perrigan which under this court's long-standing jurisprudence is an independent and adequate state law ground that this court recognizes and imposes the procedural default. There are two ways to overcome the default. The first is cause prejudice which was conclusively established adversely to Mr. Prieto below and is not before the court. The other way to overcome the procedural default is to show a fundamental miscarriage of justice. To meet that standard, Mr. Prieto must show by clear and convincing evidence that but for a constitutional violation, no reasonable trier of fact would have found him eligible for the death penalty. Mr. Prieto does not meet either of those two standards. First, the constitutional violation and this wraps into the Hall discussion. I know I treated it separately in the brief but I think we can address it in one go here and that is he did not suffer any constitutional violation. Hall is not retroactively applicable to him because Hall announced a new procedural rule after his direct review was finished. So does your claim to procedural default depend on whether we decide whether Hall is retroactive or not? No, your honor. No. I mean, no. No, it does not. Because you know often when you're in front of a court you want to put forth the easiest way for the court to go your way and what might that be in this case? The easiest way is that three different fact-finders now have had this claim before them and no one has intellectually disabled. The 2008 jury heard voluminous evidence, your honors, this is just the psychological experts. They heard voluminous evidence about all of these things, the range, and it was clear to this jury that it's a range, that it is not a fixed number. That's the point. That's I guess the concern. Were they laboring under an assumption that this was a rigid framework that they had to statutory definition which is set forth in the brief, which is two standard deviations below the mean, which was explained to them exactly in the language of Hall about 70. It's a range. It is not a fixed number. But 70 is in the statute. 70, I don't believe so. It's two standard deviations below the mean is the statute. Okay. So I thought the statute was, I thought, what I guess my question was going to do we have to parse Hall or not? And your answer was, no, no, no, you don't have to do that. It seems to me you are doing it. So maybe I'm misunderstanding. You do not have to parse Hall. I mean the principle submission is this is defaulted under Slayton v. Perrigan. And under Hedrick, under Lewis. Can you put Hall aside and still win your case? Put Hall aside. The question is that, that was at least, maybe I didn't do a very good job of it. I thought that's what I asked the other attorney. Just set up Hall aside as to the standard deviations and the 70. And I thought Virginia said 72. But I said 70 as well. But I could be wrong. But if it's procedurally defaulted, then doesn't it have to be clear and convincing evidence? And it would be on both prongs. Is that not right? Well, all three prongs. There's, it's actually a three-part test, Your Honor. So. Well, how about this? How about let's just deal with the one on adaptive functioning. Absolutely. You have to let me finish. The point is, you, you keep saying, Judge Mott said, what's the easiest way for you to get there? She said, do you have to parse Hall? You said no. And then, I know you asked the questions, but the rest of your argument has been parsing Hall. Do you have to talk about IQ and ranges and deviations? Or can you go, for instance, to at least the second of the three prongs, maybe adaptive functioning? Absolutely, Your Honor. And you want to do that? Absolutely. Thank you. And there is voluminous evidence in this record that he does not suffer from adaptive functioning. There's evidence that he does, though. There is. But when it's in, when it's contested, and here it is, I think that we look essentially to the Jackson Standard. Because if he can meet the, if if our evidence can satisfy the Jackson Standard, and I submit that it does, then he can't overcome the clear and convincing bar. So, all of this evidence, and it was contested, hotly, was put before the jury. And what was before the jury is, this, this man is bilingual. This man has driver's licenses in two states that he apparently passed the test first go. This man operates heavy machinery. This man was gainfully employed. This man got himself transcontinental coming to This man executed these offenses and others, a series of them, alone. So, one of the distinctions, I mean, one of the things here is, this isn't somebody who's working with an accomplice. This is someone who is the perpetrator, the sole perpetrator. This is a man who successfully grieved the sheriff's procedures in the Fairfax County Detention Center. This is someone who is highly goal-oriented, goal-directed, and is able to plan and execute the plan to achieve his ends. They're not very positive ends, but he is able to carry them out. What's the third prong? The age of onset, Your Honor, which is before the age of 18. Again, it was contested, but Dr. Hagen said that he did not, he did not exhibit either of the other two prongs, and so that there was nothing that did that he received good grades in elementary school in El Salvador. Now, I know there was an explanation for that, but I would respectfully submit that when you look at the report cards themselves, the second page of those lists every student in the class. There's no one who has the exact same grades in the exact same subjects on that list as Mr. Prieto. So, I think the record conclusively rebuts the suggestion that there was some sort of group advancement going on in this case to try to explain away the fact that he was getting good, very good, and excellent marks when he was in elementary school. So, as soon as any one of those three goes out, and I would say he fails on at least two, but as soon as any one of those three goes out, then that's the end of the inquiry. And essentially what's going on here is he wants a do-over from what the jury determined in 2008. This court doesn't do that. We would ask the court to apply the procedural default in this case, unless the court has other questions. We'll submit. Thank you very much. Ms. Arrington, do you have any rebuttal? I'd like to respond to a couple of the issues specifically related to the unadoptive functioning, because that obviously is a critical issue here today. And respectfully, I think that Ms. Armstrong and I disagree on our assessment of the record. But specifically, some of the evidence that was presented by the government below and cited here today involved sort of the day-to-day functioning of Mr. Prieto on a certain level. The fact that he drove a car, the fact that he traveled from state to state. And I think it's instructive to look at some other cases, Atkins included, and how sort of where the line is drawn and how courts have used that in the past. Now, obviously, the adaptive deficits have to rise to the level of the statute. We contend that they do. But in looking at some of these specific allegations of things that Mr. Prieto was capable of, the court in McManus, which is a case that Ms. Armstrong submitted, sort of discusses that. Now, McManus reached a different conclusion, very different facts. In that case, the defendant had an IQ, I believe, of 82. But there is a discussion of, essentially, the fact that a defendant can do some of these day-to-day things and still meet the definition of intellectual disability. Specifically, the contention that's been raised a number of times in this case is, well, Mr. Prieto was able to successfully commit all of these crimes. Surely, he's not intellectually disabled. And respectfully, I would submit that that sort of flies in the face of the case law, specifically Atkins. I mean, if nobody with an intellectual disability was able to commit these crimes, we wouldn't have this jurisprudence. Ms. Arrington, what is your best argument for why the jury in 2008 is owed little or no deference with respect to the prior finding as the mental disability? Because of the emphasis in the record placed on the IQ tests and because of the framework that they were operating in under that point. Specifically, Dr. Hagen's testimony that he had a strict IQ of 73, which at that time was above the standard deviation. And today, under evolving standards and under Hall, is still well within the range that can be considered intellectually disabled. But you can see that it was a range, it wasn't a fixed number that the jury was operating under? I can see that the record below that this argument that there was a range was presented. However, the Virginia statute does specify an IQ score of two standard deviations below the mean, which is 70. So, I can't point to the record and say the jury was instructed that he had to have, you know, this set IQ, but that was absolutely the framework that they were working under at that time. And our belief is that under Hall and under the evolving standards, that that's different today. Well, Hall helps you there, but it doesn't help you with the other part, the one that Mr. Chedd has been talking about. Getting over the procedural bar. And your Honor, on that, I would again say that our position is that the fundamental miscarriage of justice is an appropriate exception to be applied here. And that's my time. Thank you.
judges: Diana Gribbon Motz, Dennis W. Shedd, Albert Diaz